UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action Number: 3:15-cv-00578

| | |
|---|---|
| HERBERT JUDON, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | AMENDED COMPLAINT |
| ) | (Jury Trial Requested) |
| CITY OF CHARLOTTE, a municipal ) | |
| Corporation; and the CHARLOTTE ) | |
| DOUGLAS INTERNATIONAL ) | |
| AIRPORT an agency and Municipal ) | |
| Department of the City of Charlotte, ) | |
| Defendant. ) | |

I. INTRODUCTION AND JURISDICTION

1. This is an action seeking legal and equitable relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. Section 2000e (Title VII); 42 U.S.C. 2000e 5 (f) through (k); the Civil Rights Act of 1991, 42 U.S.C. Section 1981a), and the North Carolina Equal Employment Practices Act (EEPA), North Carolina General Statutes, NCGS 143-422 et seq.

2. Jurisdiction of the court is invoked pursuant to 28 U.S.C. Section 1343, this being a proceeding seeking to enforce rights and remedies secured under Title VII and Section 1981a. Jurisdiction is also conferred upon this court by 42 U.S.C. Section 2000e-5(f)(1).

3. Jurisdiction is further invoked pursuant to 28 U.S.C. Sections 2201 and 2202, this being an action seeking a declaratory judgment declaring illegal the acts of the Defendant complained of herein.

II. PARTIES

1

4. Plaintiff, Herbert Judon, is an African American male. Mr. Judon is now and at all times relevant to this matter has been employed with the defendant, City of Charlotte, as Assistant Aviation Director of Operations at Charlotte Douglas International Airport (CLT).

5. Mr. Judon has been employed at CLT for approximately nineteen years. Mr. Judon's employment career in aviation with the CLT has included job duties and responsibilities in the following capacities: Airport Operations Manager; Airport Facilities Manager; Airport Ground Transportation Manager and Airport Operations Officer.

6. In addition, Mr. Judon's career experience includes, among other things, services as Manager of Security, Charlotte-Mecklenburg Schools; Lieutenant Colonel, U.S. Army Reserve (in which Mr. Judon served as a commanding officer and was awarded the Bronze Star Medal for service during Operation Iraqi Freedom); and Air Support Operator, U.S. Marine Corps.

7. Mr. Judon holds a Master of Public Administration and a Bachelor of Arts degree, both from University of North Carolina at Charlotte. Mr. Judon is also a 2010 graduate of the UNC Chapel Hill, School of Government Municipal Administration Course.

8. Some of Mr. Judon's professional affiliations include the following: Accredited International Airport Professional (IAP); Accredited Airport Executive - American Association of Airport Executives (AAAE); Certified-ACE/Operations & ACE/Security – AAAE; Certified Airport Security Coordinator – AAAE; Board of Directors, North Carolina Airports Association.

9. The IAP accreditation is an international airport accrediting organization, Mr. Judon achieved this credential from this organization faster than any other person similarly awarded this designation. Indeed, Mr. Judon is the most credentialed airport executive at CLT and at any airport facility within the state of North Carolina.

10. Mr. Judon has worked at every level of airport operations at CLT from entry level to the executive management level.

11. Mr. Judon, by virtue of his work experience, education training and background is well suited and highly qualified to serve in executive level managerial positions at the highest level of governance and operation at the CLT as well as any major international airport of similar size within the United States.

12. The City of Charlotte is a municipal corporation incorporated and or organized under the laws of the State of North Carolina. The City of Charlotte, by way of its municipal governance model, operates under what is commonly referred to as a Council-Manager form of government.[1]

13. Under the general laws and or the charter of the city as ratified by the General Assembly of the State of North Carolina all powers of governance for the City of Charlotte, not otherwise reserved by statute or laws of the state, rest with the body politic referred to as the City Council.

14. The City Council is a governing body elected by the people within the City of Charlotte's territorial limits. The City Council is empowered to exercise the powers granted to municipalities of the State by the North Carolina General Assembly.

15. Under the council manager form of government the city council serves as a policy making body with the day to day operations of the city vested in the city manager.

16. The city manager is hired by the city council as a body politic and is vested with the duty and authority to operate the day to day executive functions of the governance of the city of Charlotte.

---

[1] N.C. S.L. 2000-25, Revised and Consolidated Charter of the City of Charlotte

17. As a part of the overall governing organization the city is divided into several departments or sub-units of governance under the overall leadership of the city manager. One of the sub-units of governance or city departments is the Charlotte Douglas International Airport, which forms what is known as the Aviation Department.

18. The administrative head of the Aviation Department and the Chief Executive Officer for the operations of CLT carries the title of Aviation Director.

19. The Charlotte Douglas International Airport is a part of the Aviation Department of the City of Charlotte; however, upon information and belief, CLT, is funded on a self-sustaining basis from its own revenue sources, independent of general revenue funds from the City of Charlotte. In certain aspects of the operation of the Airport itself, in the carrying out of its function as an airport, CLT operates in accordance with federal regulations, rules and guidelines.

### III.   FACTS

20. The Charlotte City Manager, in 2013, appointed Brent Cagle to serve as interim aviation director. Brent Cagle is a Caucasian male. The City Manager, to the plaintiff's knowledge, prior to appointing Mr. Cagle to this interim aviation director position, did not advertise, announce or advise other assistant aviation directors of his intent to appoint Mr. Cagle or solicit the resumes of other assistant aviation directors or undertake to determine the interests of other assistant aviation directors as to their interests in being considered for the interim aviation director position.

21. Mr. Cagle in public discourse admitted that at that time he had limited background and limited experience with respect to the operations side, versus the financial side, of overall airport operations and management.

4

22. Mr. Cagle, prior to his elevation to the interim aviation director position, was and had been employed for about a year as an Assistant Aviation Director for Administration and Finance at CLT. Thus, the plaintiff and Mr. Cagle were employed in positions of equal rank within the Aviation Department's organizational structure at the time Mr. Cagle was selected in a closed process to serve as interim aviation director.

23. In and around August, 2013, at a gathering in the nature of a staff meeting, Brent Cagle announced, that he had reorganized the executive management team for CLT. Cagle announced that on an interim basis, he had created and established a deputy aviation director position and that Jack Christine would serve as deputy aviation director, chief operating officer (COO) and that position would report directly to the aviation director.

24. Cagle, later, during August 2013, further explained at a gathering of the executive leadership team that the deputy aviation director/COO would be one of the two newly created co-deputy aviation director positions reporting to the aviation director. Cagle revealed that a second co-deputy aviation director position, chief financial officer (deputy aviation director/CFO) was going to be or had been created as well. This position too would report directly to the aviation director.

25. The deputy aviation director, chief operating officer (hereinafter also referred to as "deputy aviation director/COO") position was to be responsible for the day to day operations of the facility. Specific divisional units within the aviation department, then headed by assistant aviation directors, who would report to Christine included operations, facilities and development.

26. Cagle further explained that a second deputy aviation director, chief financial officer position (deputy aviation director/CFO) was being or had been created as well. This position would be left vacant as a fallback position, reserved for and to be filled by Cagle should he not be selected as aviation director once the position was filled on a permanent basis.

27. The co-deputy director management structure was announced openly in and during August, 2013.

28. At the time of the creation of these two co-deputy director positions, there was a vacant, single deputy aviation director position on the department of aviation's organizational chart. However, that position had been vacant for quite an extended period of time and no announcement had been made concerning an expectation to fill the position.

29. At the time of this change in and around July, 2013, there were approximately four assistant aviation directors or equivalent positions at the CLT. These were operations, facilities, development and administration and finance. Plaintiff, was the only minority employee who held an assistant aviation director position. Plaintiff, as a result of this reorganization, now is among those AAD employees who report to the deputy aviation director, chief operations officer.

30. Jack Christine, who was selected to serve as interim deputy aviation director/COO, in and around July or August, 2013, had less than four years of management or supervisory experience at the time of this interim appointment. No official announcement of the vacancy and no open recruitment process was utilized when Christine was selected to the interim position.

31. Mr. Christine is a Caucasian male. Mr. Christine, at the time of his elevation to the deputy aviation director/COO position, was an assistant aviation director in a position of similar ranking on the organizational chart for the department, as the position held by the plaintiff.

32. The plaintiff had had previous, significant work experience in two of the three divisional units that would now be reporting to Mr. Christine. The plaintiff in 2013, had approximately nineteen years of supervisory and or managerial work experience.

33. Upon information and belief, Mr. Cagle and Mr. Christine, at that time and prior to this promotion being announced for Christine by Cagle, were and are close personal friends outside of the work setting.

34. The plaintiff, then serving in the ranks of AAD, was the only minority employee at CLT with the qualifications, experience, background and rank to qualify for the position of deputy aviation director.

35. Plaintiff made an inquiry concerning his concern regarding this 'closed' process—the filing of higher ranking jobs at the CLT without any recruitment or advertising of the vacancy and no solicitation among the pool of qualified persons as to their interests in the positions being filled—by way of a telephonic contact with an official at the Charlotte District Office of the U.S. Equal Employment Opportunity Commission (EEOC).

36. Plaintiff was advised that inasmuch as these actions were regarded as temporary placements, he would need to wait until an actual personnel action of a permanent nature was being carried out before he could raise a viable charge of unlawful discrimination under federal civil rights laws.

37. Mr. Christine's overall background and work experience at the time of the employment decisions complained of herein were decidedly less stellar than were the plaintiff's. Mr. Christine at that time had been employed at CLT for approximately 16 years.

38. Mr. Christine's aviation career with CLT included job duties and responsibilities of Assistant Aviation Director of Development; Planning & Development Manager; Airport Planner and Associate Airport Planner. Mr. Chistine's background at CLT was in less demanding divisions, with significantly fewer personnel to supervise than had been the case with the plaintiff.

39. Mr. Christine's educational training and background consisted of employment with the National Aeronautic Association, Arlington, Virginia. That organization is a trade association more or less and did not involve working in the management and administration of a major airport.

40.     Mr. Christine, upon information and belief, holds a Master of Public Administration from UNC Charlotte and a Bachelor of Science in Airport Management & Aviation Safety from Embry-Riddle Aeronautical University.  His professional affiliations at the time of the filling of the vacancies in issue were less comprehensive than the plaintiff's as well.  Mr. Christine's resume shows his affiliations and association to be as follows:  Accredited Airport Executive - American Association of Airport Executives (AAAE).

41.     Mr. Christine's prior associations and affiliations represents a less well-rounded, and less extensive involvement in trade associations connected with airport operations and management than was the case with the plaintiff at the time of Mr. Christine's promotions.

43.     While Mr. Cagle, as set forth above, has publicly admitted that his managerial forte was not strong in the area of general airport operations, Mr. Christine's background and experience are much less strong in that facet of airport management than is the case with the Plaintiff.

43.     Indeed, the plaintiff's performance evaluations in all years prior to plaintiff raising a concern about the closed process for filling vacant CLT managerial positions and reserving other positions for white male employees announced in 2013, were consistently at the higher end of the rating scale.  Since plaintiff raised such concerns with the defendant's utilization of a closed process for filling CLT executive positions or reserving other positions for white managers, plaintiff's performance evaluations, while fully meeting his employer's legitimate work standards, have been less stellar, and the heretofore praiseworthy comments have become much more muted and often borders upon grudging acceptability.

45. In and around October, 2014, Mr. Cagle announced, in a gathering of employees in the nature of a staff meeting, that the two deputy aviation positions had been made permanent

8

and that Mr. Christine now was permanently instated into the deputy aviation director/COO position.

46. The plaintiff is aware that at the time of the filling of these vacant executive positions at CLT, the City's recruitment and hiring policy provide that vacant positions would be announced and posted and filled through a competitive process unless there were special circumstances for such a deviation.

47. The City of Charlotte failed or refused to abide by its own policy as set out in its Human Resources (HR) rules of operations that called for the open posting of vacant positions when Mr. Christine was instated into the position of deputy aviation position/COO on a permanent basis where no competitive process used to make that selection.

48. The City of Charlotte failed or refused to follow its HR rules of operations for deviating from its stated HR policy of explaining the rationale for and justifying its deviation from its HR rules of operations of openly posting vacant when it instated Mr. Christine on a permanent basis into the position of deputy aviation director/COO.

49. The City of Charlotte failed or refused to follow its HR rules of operations for posting of vacant positions when it announced through Mr. Cagle that it was reserving, to be filled by a pre-selected non-minority employee, a second deputy aviation director/CFO position for Mr. Cagle, should he feel a need to use it.

50. The use of a closed promotion process—where personnel are simply selected by the decision making official--without any announcement of the vacancy and no opportunity for a pool of qualified individuals to compete for the position based on merit, violates principles of equal and fair employment opportunities under federal civil rights laws. Also, the use of a closed promotion process is antithetical to requirements of the Charter for the City of Charlotte. The

City's Charter, provides in pertinent part, the following.

> "The Council shall establish by appropriate ordinances a system of personnel administration, not inconsistent with the provisions for civil service hereinafter set forth, governing the appointment, promotion, transfer, layoff, removal, discipline, and welfare of City employees. Such ordinances shall be based upon the following general standards:
>
> (1) Employment shall be based on merit without regard to race, creed, color, sex, political affiliation, age, or physical defect or impairment of the applicant unless the defect or impairment prevents the applicant from performing, with reasonable accommodation, an essential function of the employment sought." …
>
> (4) Appointments and promotions shall be made solely on the basis of merit and fitness, demonstrated by examination or other evidence of competence. …
>
> (6) Such ordinances shall also prescribe the details of personnel organizations and procedures.[2]

51. Thus, the utilization of a closed process by the City in the filling of higher level executive managerial level positions—where, upon information and belief, the City's overall record shows an underutilization of minority employees in this employment category—caused the plaintiff to this time file a charge alleging unlawful discrimination in the filling of these vacancies.

IV. FIRST CAUSE OF ACTION

52. Plaintiff incorporates by reference paragraphs 1 through 51 above.

53. By establishing and using a closed process for filling the vacant positions of deputy aviation director, and ultimately choosing on an interim and subsequently on a

---

[2] N. C. S. L. 2000-25; Charter of the City of Charlotte, Chapter 4, Article II.

permanent basis a less qualified, non-minority individual to serve in one of the deputy aviation director positions and leaving the other deputy aviation director position vacant for a named, non-minority race employee, the City has utilized hiring practices that have had a disparate impact upon the Plaintiff and other qualified executive level minority employees.

54. By limiting its minority level managerial employees in their ability to compete for available vacant positions for which they are qualified the City's promotion practices have had a disparate impact upon the Plaintiff and its qualified executive level minority employees, which has deprived such individuals of equal access to advancement opportunities within city government in violation of the Civil Rights Act of 1964, as amended.

## V.  SECOND CAUSE OF ACTION

55. Plaintiff incorporates by reference the allegations and claims raised at paragraphs 1 through 54, above.

56. By establishing and using a closed process for filling the position of deputy aviation director/COO, and instating into that position an individual of a different race, who has less experience and has lesser qualifications than the plaintiff, the City has violated plaintiff's fair and equal employment rights and opportunities under Title VII of the Civil Rights Act, of 1964 as amended.

57. By creating and reserving a deputy aviation director/CFO position, to be filled by a specified white male, without regards to his qualifications without posting, advertising or allowing qualified minority executive level employees regardless of their qualifications to otherwise complete, has a disparate impact on the equal employment rights and opportunities of qualified minority employees in violation of Title VII of the Civil Rights Act of 1964, as amended.

## VI. THIRD CAUSE OF ACTION

58. Plaintiff incorporates by reference the allegations and claims raised at paragraphs 1 through 57, above.

59. By establishing and using a closed process for filling the position of deputy aviation director/COO, and instating into that position an individual of a different race, who has less experience and has lesser qualifications than the plaintiff, the City has violated its obligations and responsibilities set out in its Charter and the public policy of the State of North Carolina and has violated plaintiff's rights for fair and equal employment rights and opportunities under North Carolina EEPA.

60. By creating and reserving a deputy aviation director/CFO position, to be filled by a named white male without regards to his qualifications, at such individual's election, without posting, advertising or allowing an equal opportunity for minority, non-white employees to complete—though they may be imminently qualified and better qualified for the position—is a violation of the duties and responsibilities and obligations set out in the city's Charter, and constitutes a violation of the public policy of the State of North Carolina and operates to deprive qualified minority employees of fair and equal employment opportunities under the North Carolina EEPA.

## VII. DAMAGES

61. Because of the discrimination claimed herein, the plaintiff has suffered loss of status, emotional and psychological distress, including extreme worry, loss of sleep, loss of income, emotional distress, and a loss to his reputation and standing among his peers.

62. Plaintiff has been and continues to be irrevocably injured by the discriminatory actions complained of herein. The injuries which plaintiff suffered are and will continue to be

irrevocable until enjoined by this court. Plaintiff has no other adequate or complete remedy other than this proceeding to have the practices of the defendant complained of herein remedied. Plaintiff seeks compensatory damages under the Civil Rights Acts of 1964 and 1991 and under Section 1981a.

## VIII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

63. In accordance with the provisions of the Title VII of the Civil Rights Act of 1964, the plaintiff timely filed a charge alleging unlawful employment practices were committed against him by the defendant, City of Charlotte, with the U. S. Equal Employment Opportunity Commission (EEOC). That charge was denominated by the EEOC as Commission charge number 430-2015-00233 and was duly served upon the defendant employer by the EEOC.

64. Following its processing of the charge 430-2015-00233, the EEOC issued plaintiff a Notice of Dismissal and Right to Sue letter dated August 24, 2015. Plaintiff hereby brings this cause of action within 90 days of the plaintiff's receipt of the Commission's Dismissal and Notice of Rights letter taking into account the court's closure for scheduled holidays and weekend periods when the court is regularly not open for the transaction of business. A copy of that Notice of Rights document is attached hereto as Amended Complaint Exhibit A.

65. Plaintiff has timely exhausted his administrative remedies in this cause under the requirements of 42 U.S.C. Section 2000e.

## IX. DEMAND FOR TRIAL BY JURY

66. The plaintiff requests a trial by jury as to all issues of fact and law.

## X. PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays of this court as follows:

A. That the matter be set for trial by jury at the earliest possible date.

B. That the court issue an injunction permanently enjoining the defendant employer from engaging in further or additional discriminatory employment practices and conduct.

C. That the plaintiff be granted "rightful place" instatement to the position of deputy aviation director CLT with all the rights, responsibilities and duties that come with the position, retroactive to the date in which the position initially was filled through a closed, non-competitive employment process in and around July, 2013 on an interim basis and subsequently on a permanent basis since in and around July, 2014.

D. That plaintiff be accorded all benefits of the position of deputy aviation director, retroactive to the date in which the position was filled on an interim basis in and around July 2013, and on a permanent basis in and around July 2014, or a comparable position of equal stature, pay and responsibility, with appropriate back pay, plus interest, full seniority to the extent seniority becomes a basis for a personnel decision or action relating to plaintiff's employment status with the defendant, and that plaintiff be afforded all leave and other benefits, to include contributions to retirement and or savings programs, he would have been able to participate in had the plaintiff not been estopped from fairly competing in the process for the selection of the deputy aviation director position that was filled initially on an interim basis in and around July 2013, and subsequently on a permanent basis in and around July 2014.

E. That plaintiff be paid any other lost wages, salaries and benefits that come with the rightful place instatement into the deputy aviation director position.

F. That the defendant, City of Charlotte, be enjoined from further and future promotion of employee into mid-level and higher-level management positions without

14

adhering to the requirements of its stated HR policies that provide for vacant positions to be announced, advertised, posted and published in accordance with the City's published Hiring and Recruitment Policy, and or the dictates and requirements of the City's Charter.

G.      That the plaintiff be awarded compensatory damages in an amount to be proved at trial.

H.      That the plaintiff be awarded his reasonable attorney fees.

I.      That the plaintiff be awarded such further and additional relief as is just, appropriate and warranted under the law and the facts of this case.

Respectfully submitted, this the 19th day of January, 2016.

>                    FOR THE PLAINTIFF
>
>                    The Cummings Law Firm, P.A.
>
>                    /s/Humphrey S. Cummings
> By:                HUMPHREY S. CUMMINGS, Esquire
>                    Attorney and Counselor at Law
>                    N.C. State Bar I.D. No. 7677
>                    1230 Morehead Street, Suite 404
>                    Charlotte, NC 28208-5210
>                    Tel: 704.376.2853; fax, 704.376.3334
>                    E-mail: TheCummingsFirm@aol.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action Number: 3:15-cv-00578

| | |
|---|---|
| HERBERT JUDON,<br>    Plaintiff,<br><br>  v.<br><br>CITY OF CHARLOTTE, a municipal Corporation; and the CHARLOTTE DOUGLAS INTERNATIONAL AIRPORT an agency and Municipal Department of the City of Charlotte,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

VERIFICATION OF THE AMENDED COMPLAINT

I, Herbert Judon, hereby state and attest to the following. I am the plaintiff in the foregoing Amended Complaint alleging unlawful employment practices against my employer the City of Charlotte. I have read the amended complaint and hereby state that the factual information set out in the complaint are facts of my own knowledge. The factual matters stated in the Amended Complaint are true and correct to the best of my knowledge. As to any matters stated upon information and belief set out in the Amended Complaint, I hereby attest and state that such matters are based on my good faith understanding of the matters stated and based upon my understanding and preliminary investigation of the matters in issue, I believe them to be true.

This, the 19th day of January, 2016.

                SIGNED: _/s/ Herbert Judon_
                        HERBERT JUDON, Plaintiff

| EEOC Form 161 (11/09) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Herbert Judon<br>11540 Leigh Glen Circle<br>Charlotte, NC 28269 | From: | Charlotte District Office<br>129 W. Trade Street<br>Suite 400<br>Charlotte, NC 28202 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 430-2015-00233 | Christine Smith, Investigator | (704) 954-6465 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Reuben Daniels, Jr., Director

AUG 26 2015
(Date Mailed)

Enclosures(s)

cc:
Sheila Simpson
HR Consultant
CITY OF CHARLOTTE
600 East Fourth Street
Charlotte, NC 28202

Humphrey S. Cummings, Esq.
THE CUMMINGS LAW FIRM, P.A.
1230 W. Morehead St. Suite 404
Charlotte, NC 28208

**(Exhibit A)**