UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-CV-578-RJC-DSC

| | |
|---|---|
| HERBERT JUDON, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CITY OF CHARLOTTE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment, (Doc. No. 21); Defendant's Memorandum in Support, (Doc. No. 21-1); and Plaintiff's Memorandum in Opposition (Doc. No. 26). The motions have been fully briefed, a hearing has been held, and the issues are ripe for adjudication.

I.  BACKGROUND

   A. Procedural Background

Herbert Judon ("Plaintiff") originally sued both the City of Charlotte ("Defendant") and Charlotte Douglas International Airport for violations of the Age Discrimination in Employment Act, Title VII of the 1964 Civil Rights Act, 42 U.S.C. §1981, and the North Carolina Equal Employment Practices Act. (Doc. No. 1 at 9–10). Since his initial filing, Plaintiff amended his complaint, dropping his age discrimination claim. (Doc. No. 2). After both defendants filed a Motion to Dismiss, (Doc. No. 7), this Court followed Magistrate Judge Cayer's recommendation, (Doc. No. 13), and dismissed with prejudice: (1) all claims against Charlotte Douglas International Airport; (2) Plaintiff's 42 U.S.C. §1981 claim; and (3) Plaintiff's North Carolina Equal Employment Practices Act claim. (Doc. No. 14). As a result, Plaintiff is left with a Title VII disparate impact claim against the City of Charlotte. Defendant now moves for summary judgment

on Plaintiff's remaining claim, arguing that Plaintiff has failed to properly support his disparate impact theory. (Doc. No. 32). This Court agrees with Defendant and hereby grants their Motion for Summary Judgment.

B. Factual Background

At the time this lawsuit was filed, Plaintiff was employed by Defendant as Assistant Aviation Director of Operations at Charlotte Douglas International Airport. (Doc. No. 2, ¶4). As an Assistant Aviation Director, Plaintiff was one of four who answered to the Deputy Director who in turn answered to the Aviation Director. (Id. ¶ 29). In July of 2013, the North Carolina General Assembly transferred control of Charlotte Douglas International Airport to another entity. (Doc. No. 21-1 at 2-3). This legislation failed to take effect after a judge ordered a temporary injunction. (Id.). This situation created uncertainty as to the airport's future governance. (Id. at 3). Amidst this uncertainty, Jerry Orr, the Aviation Director, abruptly left his position on July 13, 2013. (Doc. No. 26 at 3). This left both the Aviation Director and Deputy Director positions above the four Assistant Directors vacant (Id.). Among the four Assistant Deputy Directors was Plaintiff, Mark Wiebke, John Christine, and Brent Cagle. (Doc. No. 21-1 at 4). Plaintiff was the only African American Assistant Director. (Id.) Among these four Assistant Deputy Directors, Cagle had 1.5 years' experience at the airport, all of which was as Assistant Director. Christine had 16 years' experience at the airport, 2 of which were as an Assistant Director. Wiebke had 25 years' experience at the airport, 12 of which were as an Assistant Direct. Plaintiff had 16 years' worth of experience at the airport, with one year as an Assistant Director. (Id.) (citing Doc. Nos. 21-8, 21-10–12).

After Orr's departure, the City Manager appointed Assistant Director Cagle as interim Aviation Director. (Doc. No. 26 at 3). The appointment of Cagle was consistent with the City

Manager's power to fill interim positions in the event that a Department Director position opens. (Doc. No. 21-1 at 4). As such, Cagle's appointment was a "closed process" in that the position was not advertised or opened for interviews. (Id.). After his appointment, Cagle temporarily promoted Christine, one of the remaining Assistant Directors, to the vacant Deputy Director position. (Id.). This interim appointment, like that of the interim Aviation Director position, was closed in that neither Plaintiff nor Wiebke were offered the opportunity to interview for the position. (Id.).

These closed hiring processes are not the norm. City hiring policy provides that "[a]ll vacant positions shall be posted unless under unusual circumstances as approved by the Human Resources Director." (Doc. Nos. 21-1 at 7; 26 at 6). However, Defendant defines the governance issues affected by the North Carolina legislation, as well as the sudden departure of Orr, as "unusual circumstances" that did not require following the norm or posting the positions. (Doc. 21-1 at 9–10).

In 2014, Cagle reorganized the Aviation Department's management structure by adding a second Deputy Director position between the Aviation Director and the four Assistant Director positions. (Id. at 6). In doing so, Cagle made Christine's interim position permanent and allowed the newly created second Deputy Director position to remain open until a permanent Aviation Director was announced. (Id.). Again, there was no interview process in filling the Deputy Director role permanently. (Id.). This closed process used to appoint Christine to Deputy Director left Plaintiff, an African American male, and Wiebke, a Caucasian male, in their old roles as Assistant Aviation Directors without a chance to apply for the permanent Deputy position.

Plaintiff has 19 years of experience with the City working as Airport Operations Manager, Airport Facilities Manager, Airport Ground Transportation Manager, and Airport Operations

Officer. (Doc. 26 at 2). In terms of the quality of Plaintiff's work, Orr rated Plaintiff's 2012-2013 performance as Aviation Assistant as "completely satisfactory." (Id. at 5). Thereafter, from 2013-2015, Plaintiff's performance evaluations were rated as "entirely satisfactory." (Id.).

Defendant does not question Plaintiff's qualifications, but emphasizes that Christine was chosen for legitimate reasons entirely separate from race. First, Airport stakeholders such as American Airlines and the federal Transportation Security Administration expressed concern regarding Plaintiff's ability to work with them. (Doc. 21-1 at 4–5). Second, Cagle based Christine's appointment on past work performance in addition to already established positive relationships with the Airport stakeholders that had concerns about Plaintiff. (Id.).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). This "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

## III. DISCUSSION

Plaintiff claims that the closed hiring process used for both the interim and permanent placement of the vacant Deputy Director position resulted in a violation of Title VII due to a disparate impact on the basis of race. (Doc. Nos. 2 at 10–11, 26 at 4). Specifically, Plaintiff alleges a failure-to-promote claim within the disparate impact theory. (Doc. No. 2 at 11) ("[T]he City's promotion practices have had a disparate impact upon the Plaintiff and its qualified executive level minority employees, which has deprived such individuals of equal access to advancement opportunities within city government …."). For the reasons below, the Court finds that, even after

construing facts in a light most favorable to him, Plaintiff fails to establish a disparate impact claim.

The analysis for a failure-to-promote claim extrapolates factors first identified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), a Title VII employment discrimination case. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) (establishing the elements for a disparate treatment claim for failure to promote). As such, in order to prove a prima facie case of failure to promote due to racial considerations, Plaintiff must show: "(1) [he] is a member of a protected group, (2) [he] applied for the position in question, (3) [he] was qualified for that position, and (4) the defendants rejected [his] application under circumstances that give rise to an inference of unlawful discrimination." Id. After Plaintiff establishes a prima facie case, Defendant then has the burden to "'articulate some legitimate, nondiscriminatory reason' for the decision not to promote." Id. (quoting McDonnell, 411 U.S. at 802). Plaintiff then has the opportunity to show that Defendant's otherwise legitimate reasons are actually just pretext for discriminatory intent. Id. Pretext is established "by proving that the defendant's explanation for an employment decision is 'unworthy of credence' or that the defendant's explanation is false." Id. at 269.

To begin with, Plaintiff attacks the legitimacy of the closed process used by Defendant to fill both the interim and permanent Deputy Director positions. (Doc. No. 26 at 6–11). However, the Court finds that the legitimacy of Defendant's closed hiring process is a factual dispute entirely irrelevant to Plaintiff's claim. The deprivation of an opportunity to apply for a position may seem unjust, but it does not, without further showing, suggest that the deprivation was due to Plaintiff's race. Rather, the key issue before the Court is the fourth and final McDonnell factor: whether "the

defendants rejected [his] application under circumstances that give rise to an inference of unlawful discrimination."[1] McDonnell, 411 U.S. at 802.

After assailing the legitimacy of the closed hiring process used to appoint Christine, Plaintiff claims to fulfill a prima facie showing of discrimination. Plaintiff argues the following: (1) as an African American, Plaintiff falls within the protection of Title VII; (2) Plaintiff qualifies for the Deputy Director position given his past employment experience; and (3) Defendant denied Plaintiff the opportunity to compete because of his race because he was "considered not able to gain knowledge across areas of his everyday job performance" while "Christine, being white, could by way of simple interest, learn all the aspects of airport management." (Doc. No. 26 at 19–20).

In response, Defendant does not challenge the fact that Plaintiff, as an African American, falls within the protection of Title VII. Nor does Defendant deny that Plaintiff was a qualified and skilled employee. Rather, Defendant argues that Plaintiff has failed to prove that circumstances surrounding the appointment of Christine gave rise to an inference of unlawful discrimination. (Doc. No. 21-1 at 14). As such, Defendant asserts that Plaintiff has yet to identify other African American employees adversely affected by the closed process. (Id. at 10). Even if the hiring process violated the City's policy, Defendant argues it adversely affected everyone—regardless of their race. For example, Defendant points to Plaintiff's admission that Wiebke, a Caucasian male, was also qualified for the position but found himself similarly situated in that he was unable to apply for Deputy Director due to the closed process of appointing Christine. (Id. at 10–11, 15).

---

[1] The Court acknowledges that, in a normal case, there would need to have been an application submitted by Plaintiff in accordance with the second McDonnell element. Anderson, 406 F.3d at 268. Because of the unusual circumstances of the closed hiring process, the Court assumes for the purpose of this test that Plaintiff is excused for not formally applying for the position.

Furthermore, Defendant points to Plaintiff's statements admitting similar closed hiring processes were used in other divisions of the City that resulted in two African Americans benefitting from their use. (Id. at 11–12) (citing Doc. No. 21-8 at 155:17–156:16).

After consideration of both parties' arguments, and viewing the facts and evidence in the light most favorable to Plaintiff, the Court agrees with Defendant. The closest Plaintiff comes to proving discriminatory intent behind the use of closed hiring processes is by pointing to communications between Interim Aviation Director Cagle and Christine. Plaintiff states Cagle communicated with Christine about the latter's candidacy for the permanent Deputy Director position. (Doc. No. 26 at 21). Plaintiff argues these communications gave Christine a year to audition and train for the Deputy position without others receiving an opportunity to interview. (Id.). Plaintiff also makes a general assertion that this exclusive opportunity was given due to Christine's race. (Id. at 21–22).

Even if Cagle preselected Christine for the Deputy Director position, this selection, albeit an unfair one, does not alone infer discrimination against others on the basis of race. Sherman v. Westinghouse Savannah River Co., 263 F. App'x 357, 369 (4th Cir. 2008). Christine would have been preselected to the detriment of all other qualified applicants, regardless of race. See Blue v. U.S. Dep't of Army, 914 F.2d 525, 541 (4th Cir 1990) (finding that when an employee is preselected for a position unfairly, that selection disadvantaged all applicants for the job regardless of their race). Plaintiff failed to provide evidence that Christine was favored or that Plaintiff was disfavored due to race. Therefore, Plaintiff cannot fulfill the fourth element to a failure-to-promote disparate impact claim.

Even if the Court were to find that Plaintiff proved a prima facie case of discrimination, Defendant nonetheless established a legitimate, nondiscriminatory reason for promoting Christine

rather than Plaintiff. Cagle justified his decision, stating that on at least two occasions, airport stakeholders expressed concern regarding Plaintiff's ability to work with them. (Doc. No. 21-10 at 18:25–19:5). Cagle explained further that his expectation for leadership would include the ability to manage and work with these stakeholders in an effective manner. (Id. at 18:16-21). Such a reason combats any notion that Defendant was motivated by a discriminatory animus.

While Plaintiff can combat Defendant's justifications by proving them to be mere pretext to cover discriminatory intent, Plaintiff has failed to do so. That is, Plaintiff has not established that Defendant's "proffered explanation is unworthy of credence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)). Plaintiff, in an attempt to characterize Defendant's reasoning as pretext, points to his qualifications for the job. (Doc. No. 26 at 21). However, evidence shows that Plaintiff was equally qualified as other candidates. In fact, Plaintiff admitted that Wiebke was *more* qualified for the position than Plaintiff. (Doc. No. 21-8 at 155:17–25, 156:1–9). This admission defeats Plaintiff's use of qualifications as a measurement of Defendant's alleged discriminatory intent. Defendant, as an employer, "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259. Without additional evidence, Plaintiff has not established that Defendant used unlawful discriminatory criteria to pick one employee to promote among other, similarly qualified employees.

### IV. CONCLUSION

Plaintiff claims that Defendant's use of a closed hiring process denied him equal employment opportunities for promotion and advancement. While Plaintiff goes through great lengths to show that this closed process was unfair, he fails to establish it was racially discriminatory. Defendant is therefore entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment as to Plaintiffs' Claims, (Doc No. 21), is **GRANTED.**

2. The Clerk of Court is directed to close this case.

Signed: November 9, 2017

Robert J. Conrad, Jr.
United States District Judge